Julian W. SEARS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21555.

United States Court of Appeals Fifth Circuit.

March 18, 1965.

Leon A. Wilson, II, Waycross, Ga., for appellant.

Donald H. Fraser, U. S. Atty., Savannah, Ga., for appellee.

Before TUTTLE, Chief Judge, and MOORE* and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellant Julian Sears, sheriff of Coffee County, Georgia, was convicted below under an indictment charging that he with Harris Johnson, Beecher Wright, and other persons unknown to the grand jury conspired to violate the Internal Revenue laws relating to the possession of an unregistered distillery. The alleged co-conspirators were jointly indicted, but a severance was granted with the result that Sears was tried separately.

## I.

Appellant's first contention is that his motion for acquittal should have been granted because the evidence was insufficient to prove the conspiracy charged. This necessitates a review of the evidence. The government's case was built primarily around the testimony of Dorsey Davis, a former bootlegger who worked with government investigators as an undercover agent and informer. His testimony, corroborated in many particulars by federal agents, established the following. Davis approached government agents and offered to help secure evidence against Sheriff Sears. Davis explained that he and Sears had collaborated in the whisky business in the past, and that he wanted to see Sears caught. The federal agents agreed to employ Davis as an undercover agent, and agreed to pay him $10.00 a day for expenses plus "a substantial sum" if he was successful in producing evidence

* Of the Second Circuit, sitting by designation.

against Sears. Davis eventually received an $800.00 fee.[1]

Davis first contacted Sheriff Sears on July 2, 1963. He told Sears that he wanted to resume his illegal whisky operations, and asked Sears if he would furnish "protection," that is, permit him to carry on his bootleg activities and warn him of the movements of state and federal agents. Sears agreed to furnish this protection for $250.00 a week.

At the time of this agreement, Davis did not have a still, but he thereafter contacted Johnson and his employee Beecher Wright (the two alleged co-conspirators) who had an illegal still in operation. Davis and Johnson agreed to operate the still as co-venturers and to expand the enterprise. Davis was to acquire an interest by working at the still. Davis had reapproached Sheriff Sears on September 4, 1963, told him he was ready to begin production, and tendered $250.00. After some hesitation, Sears accepted the money, and the two agreed to meet each Wednesday night in a secluded area of the woods.

The agreement between Davis and Johnson was made in the presence of federal agent Hayes who posed as the employee of Davis. Wright, the employee of Johnson, was called in to help load whisky purchased at the time from Johnson. He showed Davis and Hayes the still, helped them charge it, and then withdrew from the venture. Thereafter, according to the evidence, it was operated by Davis and Hayes, with all of the production being delivered to Johnson by them except for one purchase by government agents. Thus Johnson's connection with the still was through ownership, and Wright's through firing it up on the one occasion. Davis, the informer, and Hayes, the federal agent, were the operators. Davis met Sears in the woods on each Wednesday of the next four weeks and paid him $250.00 each time. At one of these meetings,

Sears agreed to warn Davis of the presence of federal agents in Coffee County by placing a pine top in the left rut of the trail leading to the Johnson-Davis still. Sears never in fact used the pine top warning, and federal agents later moved in and destroyed the still. The indictment, trial, and conviction of Sheriff Sears followed.

On this appeal, Sears contends that the foregoing evidence shows only a conspiracy between himself and Davis, whereas he was indicted and convicted for conspiring with Johnson and Wright. Davis was not named as a co-conspirator in the indictment. Since Davis was an undercover agent secretly intending to frustrate the conspiracy, it is contended that he was incapable of being a party to the conspiracy or of serving as a connecting link between Sears on the one hand and Johnson and Wright on the other.

■ There was no evidence that Sears ever had any contact with Johnson and Wright or that he even knew they were assisting Davis in the operation of the still. Davis himself testified that he never mentioned their names to Sears. However, the evidence does show that Sears knew that some persons, names to him unknown, were working with Davis. A tape recording of one of the clandestine meetings between Sears and Davis shows that Sears knew Davis was not alone in his enterprise. We hold that this was sufficient to connect Sears to a conspiracy with Johnson and Wright. It is firmly established that it is not necessary for a conspirator to know the identity of his co-conspirators or the exact role which they play in the conspiracy. Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344; Sigers v. United States, 5 Cir., 1963, 321 F.2d 843; United States v. Dardi, 2 Cir., 1964, 330 F.2d 316; United States v. Wenzel, 4 Cir., 1962, 311 F.2d 164; and Isaacs v. United

---

1. Davis also worked as an informer on other cases. He would not deny that he may have been paid a total of as much as $10,000. He kept no records of amounts received.

States, 8 Cir., 1962, 301 F.2d 706. The fact that Sears' only connection with and knowledge of the unknown co-conspirators (Johnson and Wright) was through a government informer (Davis) does not vitiate the conspiracy. In Sigers v. United States, supra, we recently held that government informers may serve as the connecting link between co-conspirators. The facts of that case were somewhat different in that the informers acted at all times in accordance with instructions furnished by the co-conspirators, but we do not deem this difference significant. By agreeing to furnish protection, Sears plainly intended to assist the unknown persons working with Davis in their illegal enterprise. He is consequently properly chargeable as a conspirator with them.

 Although the evidence was sufficient to support the conspiracy charged, it was not the province of the jury to convict Sears merely upon finding that he had accepted money from Davis and furnished protection. This would establish only that Sears had combined with Davis, and as it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy. See United States v. Wray, N.D.Ga., 1925, 8 F.2d 429. In order to convict, it was incumbent upon the jury to find that Sears knew that there were others assisting Davis in his illegal whisky activities. Appellant requested a cautionary instruction to this effect which was refused by the District Court. We hold this was error. In view of the posture of the evidence and the charge actually given by the court, the jury may well have believed that it could convict Sears simply by believing that he agreed with Davis and accepted bribes from him. Consequently, the court should have given a cautionary instruction to the effect that even if the jury believed Sears had done these things, it could convict only if it further believed that he did so with knowledge that Johnson and Wright, or some anonymous persons, were also involved in the illegal enterprise.

## II.

Appellant next contends that he was unlawfully entrapped as a matter of law, and in the alternative, that the issue of entrapment should have been submitted to the jury. The District Court denied appellant's motion for acquittal based on entrapment and refused to instruct the jury on entrapment. Appellant himself introduced no evidence of entrapment, and indeed, he could not have, since at trial he denied that he accepted money from Davis in return for protection, and denied all knowledge of and participation in the alleged conspiracy. The evidence relied on to sustain the defense of entrapment was adduced in its entirety from the government's own witnesses, especially from the informer Davis.

Davis and federal agents Hamilton and Higginbotham all testified that Davis was hired by the agents for the purpose of securing evidence against Sheriff Sears, and that he was hired on a contingent fee basis, that is, he was to be paid a substantial sum if his efforts were successful. It was Davis who was the initial instigator of the unlawful collaboration, in that he sought out Sears and suggested that Sears supply him with protection. Davis testified that when he approached Sears with the first $250.00 payment, Sears was reluctant to go along with the agreement because of the forthcoming election, and that Sears acquiesced only after he withdrew the $250.00 from his wallet and tendered it. There was testimony that Sheriff Sears had been a foe of bootleggers in the past, having destroyed 95 illicit distilleries in Coffee County during the less than three years he had served as sheriff. The record also discloses that Davis had a grudge against Sears.

 Before considering the merits of appellant's contentions that the District Court erred in denying his motion for acquittal and in refusing to instruct the

jury on entrapment, we must take up the preliminary question of whether entrapment is an available defense to one who, as Sears does here, denies commission of the acts charged. In Marko v. United States, 5 Cir., 1963, 314 F.2d 595; and Rodriguez v. United States, 5 Cir., 1955, 227 F.2d 912, we indicated that normally the defense of entrapment is unavailable in such circumstances. See also Eastman v. United States, 9 Cir., 1954, 212 F.2d 320. This rule seems to be an outgrowth of statements in such cases as Hamilton v. United States, 5 Cir., 1955, 221 F.2d 611, that the defense of entrapment "necessarily assumes that the act charged was committed." The basis for the rule is that it would be inconsistent and confusing to allow a defendant to contend in one breath that he did not commit the crime, and in the next breath that he was entrapped into committing it. Moreover, it will not generally be the case, because of practical reasons, for a defendant who denies commission of the crime to present any evidence of entrapment. Thus, where commission of the crime is denied, the evidentiary base for the defense of entrapment will usually be lacking.

In Henderson v. United States, 5 Cir., 1956, 237 F.2d 169, we held that the defense of entrapment was available where a defendant denied that he was a party to or knew of the conspiracy with which he was charged, but admitted commission of one of the alleged overt acts. The court stated that since the common goal of all trials is the ascertainment of truth, inconsistent defenses should be permitted or not permitted according to whether they might help or hinder the search for truth. The court went on to hold:

"So here, it seems to us that the defendant could admit operating the illicit still, deny being a party to the conspiracy charged, and still defend on the ground that such overt acts as he did commit were done as a result of entrapment; he could say, 'I did not go so far as to become a party to the conspiracy, but to the extent that I did travel down the road to crime, I was entrapped.' The two defenses do not seem to us so repugnant that proof of the one necessarily disproves the other. Whether a greater degree of inconsistency in defenses should be permitted need not be decided in this case."

In the present case, substantial evidence of entrapment was introduced in the case by the testimony of the government's own witnesses. The defendant Sears did not take an inconsistent position in the sense of offering any evidence of entrapment which would necessarily contradict and disprove his primary defenses that he never committed any of the acts charged. The question is whether under these circumstances, a defendant is precluded from invoking the defense of entrapment. The Marko and Rodriguez cases, supra, did not present this question, and are not controlling here.

■■ We hold that where, as here, the government's own case in chief injected substantial evidence of entrapment into the case, the defendant is entitled to raise the defense by motion for acquittal and by requested instruction to the jury. We do not think it is impermissibly inconsistent for a defendant to deny the acts charged, yet urge the court on motion for acquittal that the government's own evidence establishes entrapment as a matter of law. Similarly, the defendant is entitled to have a charge adjusted to the evidence, and if the government injects evidence of entrapment into the case, the defendant is entitled to have the jury instructed that if they find he committed the acts charged, they must further consider whether he was entrapped into committing them. We feel that the ultimate goal of the criminal trial, the ascertainment of truth, Henderson v. United States, supra, permits no other course. A criminal defendant should not forfeit what may be a valid defense, nor should the court ignore what may be improper

conduct by law enforcement officers, merely because the defendant elected to put the government to its proof. We proceed therefore to consideration of the merits of appellant's asserted defense of entrapment.

In support of his contention that the foregoing evidence warranted a directed verdict of entrapment, appellant relies on Williamson v. United States, 5 Cir., 1962, 311 F.2d 441. There we held that it constituted entrapment as a matter of law for the government to employ an informer on a contingent fee arrangement to produce evidence against a particular named defendant as to crimes not yet committed, in the absence of some justification or excuse for such an arrangement. The court suggested that justification or excuse might be found in the fact that federal agents had knowledge that the particular defendant was engaging in illegal liquor dealings, or by showing that the informer was carefully instructed on the rules against entrapment and that the informer understood that he was only to offer the suspect an opportunity to commit the crime, and was not to induce it. In Hill v. United States, 5 Cir., 1964, 328 F.2d 988, we held that justification for a contingent fee arrangement was adequate where the defendant had a past record of whisky violations, and neighbors had complained of his illegal activity.

■ In the present case, Davis approached federal agents and informed them that Sears had accepted payoffs and furnished protection in the past. The federal agents thus had adequate grounds to believe that Sears had been or was engaging in illegal activities. Moreover, Sears was a state law enforcement officer sworn to uphold the law. Investigation and detection of illegal activities on his part was necessarily rendered more difficult. These two facts furnished sufficient justification for the contingent fee, and a directed verdict of entrapment was not warranted.

■ The fundamental question in entrapment is whether the government agents actively induced the defendant to commit the crime charged or merely afforded him an opportunity to do so. The defense of entrapment rests on the theory that the government may not be allowed to contend that a defendant is guilty of a crime where government officials were the instigators of his conduct. See Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Sorrells v. United States, 1932, 287 U. S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Accardi v. United States, 5 Cir., 1958, 257 F.2d 168; Hamilton v. United States, supra; and 1 Wharton, Criminal Law and Procedure § 132 (Anderson 1957). Here the evidence showed that the informer Davis was working on a contingent fee basis, that he sought out Sears to suggest the illegal scheme, and that he had a grudge against Sears. Sears, on the other hand, had destroyed many illegal stills in the past. Davis' own testimony showed that Sears was somewhat reluctant to participate in the conspiracy. We conclude that there was sufficient evidence upon which a jury would have been authorized to find that government agents actively induced Sears to commit the crime and hence unlawfully entrapped him. It was therefore error for the court to refuse to submit the entrapment defense to the jury.

### III.

■ Appellant assigns numerous additional errors with respect to the District Court's charge to the jury. We have carefully considered all of these and find them to be without merit. The charge when read as a whole was adequate except in the particulars above mentioned. Appellant's objections to the exclusion of certain documentary evidence are without merit. Appellant contends that the court erred in permitting the jury to hear replayed, after deliberation had begun, a certain tape recording that had been introduced in evidence during the trial. This was a matter of discretion with the court and no abuse of that discretion appears. Easley v. United States, 5 Cir., 1958, 261 F.2d 276.

In sum, we reverse and remand for a new trial on the grounds that the court erred in refusing to charge the jury that it could not convict on the mere showing under the charge as laid that appellant accepted a bribe; and also in refusing to charge on the defense of entrapment.

Reversed and remanded for further proceedings not inconsistent herewith.