**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert SEELIG, a/k/a Robert Reynolds, and Michael Kleinman, Defendants-Appellants.**

**No. 73–3840.**

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1974.

Rehearing Denied Sept. 11, 1974.

---

Arthur B. Stark, Miami, Fla., for Seelig.

Gerald Kogan, Jack R. Blumenfeld, Miami, Fla., for Kleinman.

Robert W. Rust, U. S. Atty., Michael P. Sullivan, Kerry J. Nahoom, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and RIVES and DYER, Circuit Judges.

DYER, Circuit Judge:

Seelig and Kleinman appeal from their convictions for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C.A. § 846. In addition, Kleinman appeals individually from his conviction for the substantive offense of possession with intent to distribute the contraband in violation of 21 U.S.C.A. § 841(a)(1). Kleinman challenges the latter conviction on the basis of insufficient evidence, and Seelig contends that he could not be convicted for conspiracy since he was acquitted of the substantive charge of possession. Both appellants further raise the following points: (1) that the conspiracy count must fall since an essential participant in the conspiracy was a government informant; (2) that the federal agents lacked probable cause to make warrantless arrests; and (3) that the agents' forcible entry into a co-conspirator's apartment was an unlawful intrusion under 18 U.S.C.A. § 3109. We affirm.

During the summer of 1973, Martino, a confidential informant for the Bureau of Narcotics and Dangerous Drugs (BNDD) in California, placed a number of calls to Seelig on the East Coast in an attempt to purchase cocaine. Most of the calls were made from a BNDD office and were tape-recorded. In one of their conversations, Seelig informed Martino that a shipment of cocaine had arrived in Miami and was available for sale, whereupon Martino flew to Miami

to consummate the deal. Upon arrival, Martino was met by Special Agents Martin and Sweat of the BNDD's Miami office. After discussing the anticipated transaction with the two agents, Martino made a phone call in the presence of Agent Martin to a motel in Miami Beach, and was invited by Seelig to the motel to inspect a sample of cocaine prior to delivery. At the motel Martino was introduced for the first time by Seeling to Kleinman [1] and was allowed to examine a small quantity of cocaine. After Martino agreed to purchase five pounds of the drug, Kleinman explained that they would have to go to the North Miami Beach apartment of his contact, Cliff Perry, to complete the sale. Martino then telephoned Martin, who was posing as his partner in the transaction, told the agent that he would be travelling with Seelig and Kleinman to Perry's apartment, and instructed Martin to follow their car.

At the apartment Perry brought out a one-pound bag of cocaine, and after some negotiations, went next door to obtain four more pounds of the drug. During Perry's absence Kleinman slit open the bag and offered a small sample to Martino. When Perry returned he and Martino went down to the lobby of the apartment building, supposedly to get the money from Martin to make the purchase. While Perry waited in the lobby Martino informed Agent Martin, who had been waiting in his car in the parking lot, that he had observed five pounds of cocaine on the coffee table in the living room of Perry's apartment. Martin relayed this message by radio to other agents who were waiting nearby. Shortly thereafter Perry approached Martin, believing him to be Martino's partner, and asked him if he "had the money." At that point Perry was arrested.[2]

Three federal agents then proceeded up to Perry's apartment. They knocked

---

1. Also present at the motel was James Ferrara, who was named in the same indictment as Seelig and Kleinman. He was acquitted by the district court.

2. Perry was also named in the indictment, see note 1, *supra*, and he later pleaded guilty to the charges.

at the door, and Kleinman responded by asking who was there. One of the agents answered very quietly, "Cliff." Kleinman opened the door slightly and again asked who was there. This time the agent replied, "Federal agents," showed his badge through the partly open door, then shoved the door completely open and entered. Kleinman and Seelig were arrested and the cocaine was seized.[3]

■ We first consider Kleinman's contention that the evidence was insufficient to convict him of possession. His arguments that he was only a "casual facilitator of a sale," United States v. Jones, 2 Cir. 1962, 308 F.2d 26, 30, and that constructive possession cannot be inferred from "mere presence in the area . . . or mere association with the person who does control the drug," United States v. Stephenson, 5 Cir. 1973, 474 F.2d 1353, 1355, are undercut by the facts of this case. Perry, the undisputed dealer, was not merely a friend of Kleinman, but the two had a business relationship in dealing in drugs. Although Martino made the initial contact not with Kleinman but with Seelig, Perry had contacted Kleinman to inform him that cocaine was available for sale. Moreover, Kleinman's dominion and control of the contraband were conclusively demonstrated when he opened the bag of cocaine in Perry's apartment for Martino's inspection. Based on these facts, the district court could reasonably infer that Kleinman was in constructive possession of the cocaine during Perry's absence from the apartment. United States v. Stephenson, *supra*, at 1355.

■ We find equally little merit in Seelig's contention that he could not be convicted of conspiracy since he was acquitted of the substantive offense. That argument was specifically rejected in United States v. Carlton, 5 Cir. 1973, 475 F.2d 104, 106, cert. denied, 414 U.S. 842, 94 S.Ct. 100, 38 L.Ed.2d 80.

The first common assertion of Seelig and Kleinman is that they could not be convicted of conspiracy since a government agent was an essential party to the planned distribution of concaine. Their argument is that since Martino was supposed to take the contraband back to California for distribution, and since he had no intention of carrying through with the scheme, they cannot be convicted of conspiring to distribute cocaine.

Sears v. United States, 5 Cir. 1965, 343 F.2d 139, relied upon by appellants, is wholly inapplicable to the case now before us. In *Sears* we held that there can be no indictable conspiracy when the *only* other supposed co-conspirator is a government informant. In the case *sub judice*, four persons were indicted and three convicted for conspiracy, hence the appellants lack the requisite factual basis for reliance on *Sears*.

■■ We are also unpersuaded that we should adopt the rationale of King v. State, Fla.1958, 104 So.2d 730, and Woo Wai v. United States, 9 Cir. 1915, 223 F. 412, as the appellants so strongly suggest. These cases contain broad language to the effect that a conspiracy conviction cannot result where an "essential" act to the consummation of the substantive offense is to be performed by a government agent. Such an approach, we think, is inconsistent with the basic principle that a conspiracy is proved when it is established that two or more persons agreed to commit an offense and one of them engaged in an overt act in furtherance of the agreement. *See, e. g.,* United States v. Falcone, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128. To the extent that *King* and *Woo Wai* are incompatible with this statement of the law, we decline to fol-

---

3. Only the one-pound bag of cocaine which was still on the table was admitted into evidence. The remainder which was found by the agents in a hall closet was suppressed by the district court.

low them. In this case the evidence conclusively demonstrates that Seelig and Kleinman agreed to supply cocaine to Martino for distribution, and subsequently took steps to carry out the scheme. The fact that a government informant was to effect the actual distribution of the drug does not extirpate their liability for conspiring to violate the law.

■ The appellants next contend that the agents lacked probable cause for the warrantless intrusion into the apartment. This argument is premised on the assertion that since the Miami agents had not previously used Martino as a confidential informant, the information obtained from him failed to meet the requirements of reliability established in Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. Assuming, without deciding, that the standard of reliability for a confidential informant is the same in the context of an entry for an arrest as for a search, we have previously pointed out that "[p]roof of past reliability is but one way of buttressing an informant's credibility." United States v. Squella-Avendano, 5 Cir. 1971, 447 F.2d 575, 582, cert. denied, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369. In this case the Miami agents knew that Martino's calls to Seelig were from the California office of the BNDD and had been tape-recorded. They had also discussed the case with him for some time after his arrival in Miami, and had listened to his part of the conversation with Seelig to arrange the final details of the transaction. Martino's reliability was further corroborated by Perry's question about "money" to Agent Martin in the lobby of the apartment building. We conclude that these facts satisfied the *Aguilar-Spinelli* requirements of reliability, and that the information supplied by Martino established probable cause for the warrantless entry into the apartment.

■ Appellants' final and most substantial contention is that even if the agents had probable cause, they failed to comply with 18 U.S.C.A. § 3109, which provides in pertinent part:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance.
>
> . . .

Although the statute facially applies only to searches effected pursuant to a warrant, the district court correctly held the statute applicable to this warrantless intrusion. Miller v. United States, 1958, 357 U.S. 301, 309, 78 S.Ct. 1190, 2 L.Ed.2d 1332. We also agree that the force used by the officers to gain entry in this instance invoked the provisions of section 3109. Although the agents employed a ruse to cause the door to be opened slightly, it is clear that force was used to physically enter the apartment. *See* Sabbath v. United States, 1968, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828; Smith v. United States, 5 Cir. 1966, 357 F.2d 486, 488 n. 1.

Both the appellants and the Government assert that Miller v. United States, *supra*, is authority for their respective positions. That is, Seelig and Kleinman argue that since the agents announced only their identity and not their purpose as well, the officers failed to comply with the requirements of section 3109 and that, therefore, *Miller* requires a reversal of their convictions because of the admission of evidence obtained as a result of the illegal entry. The Government concedes that the statutory requirements were not met, but contends that compliance was excused because of an exception recognized in *Miller*. We agree with the Government.

■ The *Miller* Court noted that a failure to give an express announcement of purpose could be excused if "the facts known to officers would justify them in being virtually certain that the [occu-

pant] already knows their purpose so that an announcement would be a useless gesture." *Id.* at 310 of 357 U.S., at 1196 of 78 S.Ct. The "useless gesture" exception depends on the existence of particular facts which excuse compliance with the statute. United States v. Wylie, 1972, 149 U.S.App.D.C. 283, 462 F.2d 1178; Der Garabedian v. United States, 5 Cir. 1966, 372 F.2d 697. Our consideration of the exception begins with the facts of the *Miller* decision, since the Court there concluded that failure to meet the statutory requirements could not be excused.

■ Miller was a narcotics dealer who had been given marked money by a government informant in a drug transaction. When the police came to arrest Miller at his apartment, he was unaware that he possessed marked money, and therefore the police had no reason to believe that Miller knew why they were at his door. The mere announcement of police identity was insufficient to apprise Miller of the purpose of the visit, hence an announcement of purpose in those circumstances would not have been a "useless gesture." By contrast, in the case *sub judice* the agents had information from a reliable informant that Kleinman and Seelig were in the midst of a drug transaction. Everyone, the agents and the appellants, knew that a substantial quantity of cocaine was located on the table in the living room of the apartment. Under these circumstances the agents were justified in being virtually certain that the occupants of the apartment would know the purpose of the visit as soon as the persons at the door identified themselves as federal agents. We conclude that this case is one in which compliance with the announcement-of-purpose provision of section 3109 must be excused as a useless gesture.

The judgment of conviction is free of error and is

Affirmed.