UNITED STATES of America, Plaintiff-Appellee,

v.

John Arthur DANIELS, Defendant-Appellant.

No. 77–5251.

United States Court of Appeals, Fifth Circuit.

May 5, 1978.

N. Graves Thomas, Shreveport, La. (Court-appointed), for defendant-appellant.

Edward L. Shaheen, U. S. Atty., D. H. Perkins, Jr., James E. Wilson, Asst. U. S. Attys., Shreveport, La., for plaintiff-appellee.

Before HILL, RUBIN and VANCE, Circuit Judges.

JAMES C. HILL, Circuit Judge:

John Arthur Daniels, the appellant, was found guilty by a jury of possession of heroin with intent to distribute and of distribution of heroin in contravention of 21 U.S.C. § 841(a)(1). The defendant makes fourteen assignments of error on this appeal, one of which we find necessitates reversing and remanding the case for a new trial.

The parties in the case on appeal agree on most of the underlying facts. The defendant had used heroin with Rickey Campbell, a paid "cooperating individual" (CI) for the Drug Enforcement Administration (DEA), before the heroin purchase involved in this case. On October 19, 1976, Campbell and two DEA undercover agents, John Felts and Bernard Harry, were unsuccessfully attempting to contact a certain narcotics trafficker to make an undercover drug purchase. During this unsuccessful stake-out, Campbell saw the defendant and called for him to come over to the car in which Campbell and the DEA agents were waiting. Campbell told the defendant that he was suffering from withdrawal pains, and he asked the defendant to help him locate some heroin. The defendant subsequently drove with Campbell and the DEA agents to a residence, where the defendant arranged for and consummated the purchase of the heroin involved in this case. The purchase was made with money provided by the DEA agents, and the agents gave the defendant $20 after the heroin purchase. At trial, the defendant attempted to prove that he had been entrapped into buying the heroin. The defendant also attempted to prove that he had never actually or constructively possessed the heroin and that, therefore, he was not guilty of possession with intent to distribute.

We first address the error that necessitates reversal and remand for a new trial. When a defendant raises the defense of entrapment, the primary focus of the trial is on the defendant's predisposition. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Dickens,* 524 F.2d 441 (5th Cir. 1975), *cert. denied,* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). By raising the defense of entrapment, the defendant opens himself up to a "searching inquiry into his own conduct and predisposition . . .," *Sorrells v. United States,* 287 U.S. 435, 451, [53 S.Ct. 210, 216, 77 L.Ed. 413] (1932), and the government may introduce evidence that would be otherwise inadmissible. *United States v. Dickens,* 524 F.2d 441, 444 (5th Cir. 1975), *cert. denied,* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). In the case on appeal, the government overstepped even these broad boundaries of admissibility by introducing evidence of an unrelated post-crime act involving the defendant.

Approximately three months after the heroin sale involved in this case, law enforcement officers stopped a car in which the defendant was a passenger. Although the driver was arrested for possession of a sawed-off shotgun, the record does not reflect why the car was stopped. The day after this incident, which was six days before the defendant was indicted in the case on appeal, Special Agent Fred Shanks of the Bureau of Alcohol, Tobacco, and Firearms (ATF) interviewed the defendant. In a signed written statement, the defendant disclosed that he had been a passenger in the car when it was stopped and that he had placed the shotgun under the car seat at the driver's request. The defendant also identified the gun that had been seized from the driver.

Eight days after the defendant's indictment and arrest on the charges involved in this suit, four days after his arraignment, ATF Agent Shanks again interviewed the defendant. Shanks obtained a second signed written statement from the defendant. The statement does not reflect whether any witnesses were present or whether the defendant was advised of his *Miranda* rights. The defendant was not represented by counsel during this interview, and it is unclear whether his attorney was even apprised that Shanks was going to interview the defendant. This second statement differs in only one significant respect from the first statement. The defendant disclosed

that the driver had told him that the purpose for their trip was "to take some dope away from a man." During the defendant's trial on the drug charges, the government attorney was permitted to cross-examine the defendant concerning this statement over defense counsel's objection. The trial court judge determined that the information in the statement was probative of the defendant's predisposition to possess and distribute heroin. The statement itself was not introduced into evidence.

■ Although admission of this evidence might raise an issue concerning the government's use of the "fruits" of an interview conducted without giving the defendant his *Miranda* warnings, we pretermit consideration of this issue because our analysis renders such consideration unnecessary. Admission of this evidence to prove predisposition to violate the drug laws was improper for two reasons. The act occurred subsequent to the allegedly entrapped conduct, and gun possession is not probative of a defendant's predisposition to violate the drug laws. The government argues that this court's decisions in *United States v. Dickens,* 524 F.2d 441 (5th Cir. 1975), *cert. denied,* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976), and in *United States v. Jenkins,* 480 F.2d 1198 (5th Cir.), *cert. denied,* 414 U.S. 913, 94 S.Ct. 256, 38 L.Ed.2d 151 (1973), authorize the introduction of this type of evidence to prove predisposition. These decisions do not stand for that proposition.

The defendants in *Dickens* had been charged with drug violations pursuant to 21 U.S.C. § 841(a)(1) and § 846. The defendants in that case raised the defense of entrapment. This court held that the government could introduce evidence concerning one of the defendant's conduct and statements occurring subsequent to his initial contact with the undercover agent but prior to the completion of the crime. The conduct and statements held to be admissible in that case occurred in furtherance of the very crimes with which the defendant was charged. The defendant in *Jenkins* had been charged with knowingly and intentionally distributing heroin, and he raised the defense of entrapment. This court held that the government properly introduced the defendant's post-crime statement that he would be willing to get more drugs for the undercover agent. The defendant's statement immediately related to the crime with which he was charged. In the case on appeal, however, the defendant's act, three months subsequent to the incident under investigation, had no connection with the drug charges for which he was standing trial.

■ The defense of entrapment is intended to protect otherwise innocent persons who have been induced by the government to break the law. To show that at some later date the person who has been innocent before being entrapped participated in a single pursuit of like conduct may have some relevancy, but its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Fed.R.Evid. 403. In addition, the evidence of subsequent participation in a completely unrelated criminal act, possession of the sawed-off shotgun, appears to be of no probative value with respect to predisposition to sell narcotics and to be substantially prejudicial. Therefore, we must reverse the defendant's conviction and remand the case for a new trial.

We are compelled to comment on Agent Shanks' actions although they did not affect our decision. Shanks' first interview with the defendant may have come within the ambit of this court's decision in *United States v. Vasquez,* 476 F.2d 730 (5th Cir.), *cert. denied,* 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72 (1973).[1] The defendant's first statement related only to Shanks' gun in-

---

1. In *Vasquez,* the defendant was being held in custody on a state charge of attempted murder. While in custody, the defendant was interviewed by an F.B.I. agent concerning a rifle that had been seized in a shooting. This court held that Vasquez could validly waive his *Mi-*randa* rights as to an investigation concerning the rifle though the attempted murder was "tangentially related" to possession of the rifle and though the defendant was represented by counsel on the state charge.

vestigation. Shanks' second interview with the defendant, however, has at least the facial characteristics of distorting the purpose underlying the holding in *Vasquez.* Although Agent Shanks purportedly took the second statement only as part of his investigation concerning the sawed-off shotgun, the second statement contained only one paragraph about the gun incident. The only new information of substance elicited in the second statement concerned the driver's drug-related purpose for making the trip. This purpose had no relevance to the gun investigation. It related solely to the drug charges against the defendant. The government may not use *Vasquez* as a tool to extract statements from a defendant that will strengthen the government's case against him. This court cannot, and will not, tolerate such prosecutorial misconduct.

■ Although the improper admission of evidence concerning the defendant's statements to Shanks constitutes reversible error, sound judicial administration requires that we discuss those assignments of error that may recur in the new trial. *Rivers v. United States,* 400 F.2d 935, 942 (5th Cir. 1968). To prove predisposition, the Caddo Parish Deputy Sheriff testified concerning three Caddo Parish Sheriff's Department anonymous informant investigative reports. The reports were dated December 12, 1971, August 21, 1972, and June 21, 1976. Although the witness had prepared the 1976 report, other Caddo Parish deputy sheriffs had prepared the 1971 and 1972 reports. The witness testified that the information in the reports was to the effect that the defendant was a heroin trafficker. Under Fifth Circuit precedent, the information in these reports was admissible though the government did not reveal the identity of the informants and though the witness' testimony constituted double level hearsay as to two of the reports. *United States v. Robinson,* 446 F.2d 562 (5th Cir.), *cert. denied,* 404 U.S. 959, 92 S.Ct. 323, 30 L.Ed.2d 277 (1971) (government agents testified that the Bureau of Narcotics had reports and complaints from local police departments, the state pharmaceutical board, and wholesale drug houses); *Thompson v. Unit-*

*ed States,* 403 F.2d 209 (5th Cir. 1968) (witness testified concerning reputation evidence he had gleaned from local police department reports). *See also Rocha v. United States,* 401 F.2d 529 (5th Cir. 1968), *cert. denied,* 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 796 (1969) (state narcotics agent testified that the defendant "was engaged in narcotics activities" based on information gleaned from a number of sources, including an unnamed informant).

■ Permitting the use of double level hearsay based on information originally supplied by an unnamed source unjustifiably penalizes defendants for raising the defense of entrapment. In the first Fifth Circuit decisions upholding the admissibility of double level hearsay in entrapment cases, the court merely cited cases upholding the admissibility of single level hearsay as a means of proving the defendant's reputation in the community. *See, e. g., Thompson v. United States,* 403 F.2d 209, 210 (5th Cir. 1968). The admission of double level hearsay, however, creates far greater obstacles to the accused's right to confront the witnesses against him than does the admission of single level hearsay. When a witness' testimony constitutes single level hearsay, the defense attorney can cross-examine that witness concerning the reliability and good faith of the source of the evidence against the defendant. When a witness' testimony constitutes double level hearsay, however, even this safeguard is unavailable. This situation certainly creates grave possibilities for abuse. Until decided otherwise by this court en banc, however, we are bound by Fifth Circuit authority that such testimony is admissible. *Malone v. Alabama,* 514 F.2d 77, 80 (5th Cir.), *cert. denied,* 423 U.S. 990, 96 S.Ct. 403, 46 L.Ed.2d 309 (1975).

The defendant next argues that the district court erred in permitting CI Rickey Campbell to testify that he had bought heroin from the defendant at some time prior to the drug buy involved in this case. The defendant argues that this testimony was improperly admitted because Campbell

did not specify where, when, or in what manner the defendant had previously sold heroin to him. This contention is meritless. As stated earlier in this opinion, a defendant opens himself up to a searching inquiry into his predisposition by raising the defense of entrapment, and the government may introduce evidence to prove predisposition that would be otherwise inadmissible. *United States v. Dickens*, 524 F.2d 441, 444 (5th Cir. 1975), *cert. denied*, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976); *United States v. Moriarty*, 497 F.2d 486, 488 (5th Cir. 1974). The defendant could have developed these particulars on cross-examination if he had so desired. In fact, the defense attorney asked Campbell one question about the alleged prior sale. After receiving an unfavorable response, however, the defense attorney did not continue with that line of questioning.

■ The defendant next argues on appeal that he was denied his sixth amendment right to compulsory process because Sonny Lafitte, the person who allegedly sold the heroin to the defendant, was not called as a witness by the defendant's attorney or by the court. Lafitte was present in court during the presentation of the defendant's case, but the defendant's attorney did not call him as a witness for tactical reasons. After the defense attorney had rested his case, the defendant requested the court to permit him to call Lafitte as a witness. In a conference outside the jury's presence, the trial judge stated that he would neither permit the defendant to call Lafitte nor call Lafitte as a witness of the court because the defense had rested its case and because the prosecutor had told the court that Lafitte would refuse to answer any questions concerning the defendant's case.[2] The defendant's attorney told the trial judge that, based on a pretrial conversation he had with Lafitte, he had repeatedly advised the defendant that it would be very damaging to his case to call Lafitte as a witness. Therefore, the ques-

tion presented for our review is whether a criminal defendant who is represented by counsel has a fundamental right to require that a particular witness be called at his trial.

■ It is settled law that a defendant has the right to represent himself in a criminal trial, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); 28 U.S.C. § 1654, and that he has the right to the assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The criminal defendant does not have the right, however, to a "hybrid representation," partly by counsel and partly by himself. The applicable federal statute, 28 U.S.C. § 1654, provides that "parties may plead and conduct their own cases personally or by counsel . . . ." Courts have consistently interpreted this statute as stating a defendant's rights in the disjunctive. *United States v. Shea*, 508 F.2d 82, 86 (5th Cir.), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975); *Lee v. Alabama*, 406 F.2d 466, 469 (5th Cir.), *cert. denied*, 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1969); *Duke v. United States*, 255 F.2d 721, 724 (9th Cir. 1958); *Shelton v. United States*, 205 F.2d 806, 812–13 (5th Cir. 1953). Therefore, unless an attorney's actions effectively deny the defendant his sixth amendment right to the assistance of counsel, the defendant is bound by his attorney's decisions during trial. The district court in the case on appeal did not abuse its discretion in refusing to reopen the defendant's case or to call Lafitte as a court witness. *See United States v. Doe*, 488 F.2d 93, 94 (5th Cir. 1973), *cert. denied*, 416 U.S. 991, 94 S.Ct. 2400, 40 L.Ed.2d 769 (1974); *Steinberg v. United States*, 162 F.2d 120, 124 (5th Cir.), *cert. denied*, 332 U.S. 808, 68 S.Ct. 108, 92 L.Ed. 386 (1947).

■ The defendant next objects to the admission of allegedly improper opinion evidence. When the defendant first approached the car in which CI Rickey Campbell and DEA Agents Felts and Harry were

---

**2.** It is questionable whether a trial court should base evidentiary decisions on a prosecutor's unsubstantiated representations. On the facts of this case, however, this factor does not affect our analysis.

seated, Campbell asked the defendant whether he knew the whereabouts of the person whom the Agents originally were attempting to contact. The defendant replied "No, but what do you need." At trial, the court permitted Agents Felts and Harry to testify over defense objection that they interpreted the defendant's question to be an inquiry as to the kind of drugs that Campbell was interested in buying. The defendant argues on this appeal that although qualified drug agents may testify concerning their interpretation of terms with special meaning in the drug trade, "what do you need" was not such a strange term as to necessitate the Agents' interpretations. This assignment of error is meritless. Admission of the Agents' interpretations was within the trial court's discretion. *United States v. Mandujano*, 499 F.2d 370, 379 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). The government had laid sufficient foundations for the Agents' testimonies on this point, having elicited that Felts had been a special agent with the DEA for seven years and that Harry had been a special agent with the DEA for three years. Additionally, the Agents testified that they specifically asked the defendant about his access to a heroin supply to insure that they had not misinterpreted the meaning of the defendant's question.

The defendant also argues on appeal that Agent Felts' answers to three questions on direct examination "so inflamed the minds of the jurors . . . that the material prejudice caused [the defendant] thereby was not curable . . . ." The vigor with which the defendant advances this argument bears a direct inverse relationship to its merit. The complained of answers were neither inflammatory nor in any way prejudicial.[3]

■■ The defendant assigns as error the district court judge's questioning, in the jury's presence, of Agent Harry and of Mr. Harold Hanel, a DEA chemist, concerning the nature, source, and use of heroin. Although a trial court judge may interrogate a witness to clarify his testimony or to insure that a case is tried fairly, *Manchack v. S/S Overseas Progress*, 524 F.2d 918, 919 (5th Cir. 1975); *Curd v. Todd-Johnson Dry Docks*, 213 F.2d 864, 866 (5th Cir. 1954), the court in the case on appeal overstepped the bounds of appropriate judicial intervention. When a judge interjects himself into a trial by questioning witnesses, the judge places the opposing counsel in a disadvantageous position. The attorney may hesitate to object to the judge's examination for fear of creating a conflict, or appearing to create a conflict, between the judge and himself. Therefore, when the attorneys are competently conducting their cases, it is improper for the trial judge to question the witnesses. *Gomila v. United States*, 146 F.2d 372, 373–76 (5th Cir. 1944). In the case on appeal, the judge's questions were almost bound to be prejudicial, and they had no relevance to the question of the defendant's guilt or innocence.

The defendant's next objection concerns the district court's entrapment instruction. The trial court instructed the jury that the government had the burden of proving both the defendant's commission of all the essential elements of the crimes charged and the absence of entrapment.[4] The defendant ar-

---

**3.** The answers about which the defendant complains are as follows:

Q: What part, if any, did you play in the investigation of this case?

A: I made an undercover purchase of heroin from the defendant on October 19.

T. 5.

Q: What does a hundred dollar balloon of heroin mean?

A: It is usually larger than a dollar fifteen doseable unit. Some of the dealers carry them in hundred dollar balloons so they won't have to carry large quantities in their pocket.

T. 9.

Q: When you got to the convenience store, before that had the defendant referred by name to his supplier?

A: He mentioned to me the source of his supply was named "Sonny" and he usually carried five or six ounces of heroin at that house on any given day.

T. 12.

**4.** The defendant's trial attorney submitted a requested jury instruction that entrapment was

gues on this appeal that the trial court erred in failing to instruct the jury that the entrapment defense was applicable only to the distribution charge in count two, because the defendant denied ever having actual or constructive possession of the heroin as charged in count one. The trial court's instruction allegedly caused the jury to find the defendant guilty of possession solely on the basis of a finding of predisposition.

There are numerous decisions in this circuit holding that a defendant can raise the entrapment defense only if he admits commission of the underlying offense. *See United States v. Greenfield*, 554 F.2d 179, 181–82 (5th Cir. 1977), and cases cited therein. The rationale for this rule is that it would be too inconsistent and confusing for a defendant to deny commission of the underlying offense and also to argue that he was entrapped into commission of the offense. *United States v. Greenfield*, 554 F.2d 179, 181–82 (5th Cir. 1977); *Sears v. United States*, 343 F.2d 139, 143 (5th Cir. 1965). This theory justifiably has been attacked by this court and by other courts.

In *Sears v. United States*, 343 F.2d 139 (5th Cir. 1965), this court held that the defendant could deny commission of the underlying offense and could also raise the defense of entrapment. The court stated:

> We feel that the ultimate goal of the criminal trial, the ascertainment of truth, . . . permits no other course. A criminal defendant should not forfeit what may be a valid defense, nor should the court ignore what may be improper conduct by law enforcement officers, merely because the defendant elected to put the government to its proof. 343 F.2d at 143–44.

*See also United States v. Greenfield*, 554 F.2d 179 (5th Cir. 1977); *Henderson v. United States*, 237 F.2d 169 (5th Cir. 1956). The Ninth Circuit Court of Appeals has rejected the rule against raising alternative defenses when one of the defenses is en-

trapment because some applications of the rule conflict with prevailing Supreme Court authority, because the rule cannot always be justified by the inconsistency theory, and because the inconsistency theory itself is "seriously infirm." *United States v. Demma*, 523 F.2d 981 (9th Cir. 1975). The court in *Demma* also noted that criminal defendants are permitted to assert inconsistent defenses in other contexts and that courts have permitted defendants to raise entrapment as an alternative defense. 523 F.2d at 982.

■ In the case on appeal, as in *Sears, supra*, the government's own evidence raised the issue of entrapment. Government witnesses testified that CI Rickey Campbell had been paid to help DEA Agents Felts and Harry collect evidence. Campbell initiated the unlawful act when he called the defendant over to the Agents' car and told the defendant he needed heroin because he was suffering withdrawal pains. Furthermore, the legitimate need for the rule against inconsistent defenses was fulfilled in this case. As a corollary to his plea of entrapment, the defendant admitted engaging in the illegal enterprise. Thus his plea of entrapment was not inconsistent with his position concerning the illegal acts. The government, however, charged the defendant with one activity that allegedly occurred during the admitted course of illegal conduct, which the defendant denied ever occurred. He was fully engaged in the transaction but asserted that he had not, incidentally, possessed the contraband. Whether the jury believed that he had or had not possessed the contraband, the defendant urged that the jury believe that he was entrapped into the entire transaction. His plea of entrapment went to both charges, and the trial judge was not required to separate the two counts insofar as entrapment was concerned.

an alternative defense and that the jury could not conclude from the defendant's assertion of entrapment that he admitted commission of the offenses charged. The court refused this requested instruction. As stated in the text of

this opinion, however, the trial court instructed the jury that the government had the burden of proving the defendant's commission of the crimes, T. 152–53, and the absence of entrapment. T. 159.

The district court sentenced the defendant on both counts of the indictment. The defendant argues that sentencing on both counts constitutes a violation of the double jeopardy clause because both offenses are contained in 21 U.S.C. § 841(a)(1) and because a single set of circumstances was proof of both violations. This issue, involving the same crimes under 21 U.S.C. § 841(a)(1), was decided by this court in *United States v. Horsley*, 519 F.2d 1264, 1265 (5th Cir. 1975), *cert. denied*, 424 U.S. 944, 96 S.Ct. 1413, 47 L.Ed.2d 350 (1976). The court in that case applied the "different evidence" test of *United States v. Young*, 482 F.2d 993, 996 (5th Cir. 1973) and held that sentences could be imposed for both possession with intent to distribute and for distribution because they require proof of different facts and different elements. Therefore, the district court did not err by sentencing the defendant on both counts.

We do not consider the defendant's other assignments of error because they do not appear likely to recur in a new trial.

REVERSED and REMANDED.