**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 23 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff - Appellee,<br><br>  v.<br><br>GARY WHITE, AKA Big J-Killa, AKA Big Killa, AKA JC, AKA James Cail White, AKA JC White,<br><br>      Defendant - Appellant. | No. 12-50589<br><br>D.C. No. 2:10-cr-00923-SJO-1<br><br><br>MEMORANDUM* |
| UNITED STATES OF AMERICA,<br><br>      Plaintiff - Appellee,<br><br>  v.<br><br>ANTHONY GABOUREL, AKA Bandit,<br><br>      Defendant - Appellant. | No. 13-50183<br><br>D.C. No. 2:10-cr-00923-SJO-30 |
| UNITED STATES OF AMERICA, | No. 13-50184 |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

Plaintiff - Appellee,

v.

JERMAINE HARDIMAN, AKA J-Killa,

Defendant - Appellant.

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted June 1, 2015
Pasadena, California

Before: THOMAS, Chief Judge, CALLAHAN, Circuit Judge and KORMAN,[**] Senior District Judge.

Defendants-Appellants Gary White, Anthony Gabourel, and Jermaine Hardiman appeal their criminal convictions arising from their activities in the Pueblo Bishop Bloods (PBB) gang. All appeal their convictions for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), asserting that there was insufficient evidence. In addition, White appeals his conviction for conspiracy to distribute controlled substances under 21 U.S.C. §§ 841, 846, and his sentence of 168 months imprisonment. Gabourel also

[**] The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

2

appeals his conviction for conspiracy to commit a violent crime in aid of racketeering (VICAR), 18 U.S.C. § 1959(a)(5), and his conviction for using and carrying a firearm in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A). Last, Hardiman appeals his conviction for conspiracy to distribute controlled substances under 21 U.S.C. §§ 841, 846, and his sentence of 188 months imprisonment and 10 years supervised release. We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's judgments and sentences except for White's conviction and sentence for drug trafficking conspiracy which we reverse.

1.      Sufficient evidence supports Appellants' RICO conspiracy convictions. *See United States v. Bingham*, 653 F.3d 983, 991 (9th Cir. 2011) ("'Evidence is sufficient if, viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *United States v. Odom*, 329 F.3d 1032, 1034 (9th Cir. 2003))). RICO requires an agreement to conduct or participate in the conduct of an enterprise's affairs through a pattern of racketeering activity. *See Boyle v. United States*, 556 U.S. 938, 944 (2009); *United States v. Turkette*, 452 U.S. 576, 580 (1981). The government presented abundant evidence from which the jury could find that the PBB was an unlawful enterprise, comprised mostly of African-American men from the Pueblo Bishop Housing Projects in Los Angeles,

3

who identify themselves with gang colors, tattoos, graffiti, gang signs, and apparel, and who operate within a hierarchy of "Young Gangstas" and "Old Gangstas." The jury could rationally find that the Appellants agreed to participate in the PBB's affairs through drug trafficking, gun trafficking, armed robbery, extortion, and murder.

2.    The district court did not plainly err in noting that the potential jurors "may be suspicious" regarding Appellants. Such a comment must be considered in light of the totality of the circumstances. *See Kentucky v. Whorton*, 441 U.S. 786, 789–90 (1979). Here, the district court's comment came immediately after the judge told the prospective jurors about the presumption of innocence; he then informed them that although they "may be suspicious" regarding Appellants, they were required to acquit them if the government failed to prove its case. In context, there was no error.

3.    The district court did not err by relying on acquitted conduct to sentence White. As White concedes, we have held that a district court may consider acquitted conduct when sentencing a defendant, so long as the enhanced sentence does not exceed the statutory maximum. *United States v. Mercado*, 474 F.3d 654, 657–58 (9th Cir. 2007) (citing *United States v. Watts*, 519 U.S. 148 (1997) (per curiam)), *cert. denied*, 552 U.S. 1297 (2008). White does not argue

4

that the district court's findings were unsupported or that his sentence was increased beyond a statutory maximum (nor could he).

4. The district court's increase of White's criminal history category was not unreasonable. The sentencing guidelines permit a district court to increase a criminal history category if prior criminal convictions understate the seriousness of the defendant's criminal history. *United States v. Ellsworth*, 456 F.3d 1146, 1151–54 (9th Cir. 2006); U.S.S.G. §§ 4A.1.2, 4A1.3. White had previously been convicted of voluntary manslaughter, in which two individuals were killed, but that conviction was unscored under the Sentencing Guidelines due to its age.

5. The district court increased White's base offense level under U.S.S.G. § 3B1.1 for his role as "an organizer or leader of criminal activity." The determination is factually supported by the testimony at trial that White was an "Old Gangsta" and a self-identified leader of the PBB.

6. The district court did not err by increasing White's base offense level for making credible threats under U.S.S.G. § 2D1.1(b)(2). White made several statements at an August 2009 gang meeting in which he urged younger gang members to use violence to protect PBB territory, and, indeed, within a few weeks two shootings occurred.

5

7.      Sufficient evidence supports Gabourel's conviction for a VICAR conspiracy, 18 U.S.C. § 1959(a), and the jury's finding of an underlying crime of violence for his conviction for using and carrying a firearm in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A). Gabourel confessed to participating in a drive-by shooting that resulted in the murder of Francisco Cornelio. Gabourel admitted that he and others targeted Cornelio in retaliation for the killing of a PBB gang member.

8.      Sufficient evidence supports a nexus between Hardiman's drug sales and his RICO conspiracy conviction. "A nexus exists when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." *United States v. Yarbrough*, 852 F.2d 1522, 1544 (9th Cir. 1988) (internal quotation marks omitted). Hardiman admitted that he was a member of PBB and sold drugs within the territory protected by PBB. The jury could rationally find that Hardiman was able to sell drugs by virtue of his rank within the gang and that his drug sales were related to the gang.

9.      Sufficient evidence supports the jury's verdict that Hardiman conspired to distribute at least 28 grams of crack cocaine, and also supports the

6

district court's finding that Hardiman was responsible for at least 280 grams of crack cocaine. Hardiman conceded throughout trial that he sold drugs. Moreover, several witnesses, including his drug suppliers, testified as to the extent of his drug dealing including the quantity of drugs sold to him and frequency of his purchases and sales.

10. Hardiman's sentence of 188 months imprisonment was not unreasonable. The district court considered the factors in 18 U.S.C. § 3553(a) including the sentences of other PBB defendants and Hardiman's role in the PBB, as well as Hardiman's disavowal of the gang and contrition at sentencing.

11. The district court did not err by sentencing Hardiman to 10 years of supervised release. The supervised release terms authorized by 21 U.S.C. § 841 trump the maximums set forth in 18 U.S.C. § 3583(b). *See United States v. Ross*, 338 F.3d 1054, 1057 (9th Cir. 2003) (per curiam). Although 21 U.S.C. § 841(b) does not specify a maximum term of supervised release, we have previously noted that the maximum term is life. *See id.* As 21 U.S.C. § 841(b)(1) contemplates minimum supervised release terms for 4 or 8 years, and other subsections contemplate a minimum supervised release term for up to 10 years, the district court's imposition of a 10-year term of supervised release does not exceed the

maximum, whatever it is. *See United States v. Dorsey*, 677 F.3d 944, 958 (9th Cir. 2012).

12. We hold that the district court erred by denying White's request to give the jury Ninth Circuit Model Criminal Instruction 8.26, known as a "*Sears* instruction."[1] *See Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965); *see also United States v. Escobar de Bright*, 742 F.2d 1196, 1200 (9th Cir. 1984). The instruction reads that "[b]efore being convicted of conspiracy, an individual must conspire with at least one co-conspirator. There can be no conspiracy when the only person with whom the defendant allegedly conspired was a government [agent] [informer] who secretly intended to frustrate the conspiracy." 9th Cir. Model Crim. Jury Instr. 8.26.

At trial, the government had asked the jury to find White responsible for large quantities of drugs sold by PBB members, including crack cocaine in excess of 200 grams, power cocaine in excess of 500 grams, and heroin in excess of 90 grams. White admitted to selling a confidential informant small quantities of heroin on two occasions, but argued that he did not conspire with other PBB

---

[1]Both Gabourel and Hardiman joined in White's request for a *Sears* instruction at the district court. However, neither raised the issue in their briefs on appeal. Their arguments are waived. *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012).

members to distribute drugs. In its special verdict, the jury found White responsible for less than 50 grams of heroin. Accordingly, the jury could have found that White conspired only with the confidential informant, a government agent, to distribute drugs in contravention of *Sears*, 343 F.2d at 142, *adopted in Escobar de Bright*, 742 F.2d at 1200.

"The district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence warrants per se reversal, unless other instructions, in their entirety, adequately cover that defense theory." *United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (internal citations and quotation marks omitted). Because there were no other instructions given here that sufficiently covered the defense's *Sears* theory, we vacate White's drug trafficking conspiracy conviction, Count 5, and remand to the district court. *See United States v. De Bright*, 730 F.2d 1255, 1258–59 (9th Cir. 1984) (en banc), *cited approvingly by United States v. Brooks*, 772 F.3d 1161, 1172 n.6 (9th Cir. 2014).

The dissent cites *United States v. Montgomery*, 150 F.3d 983 (9th Cir. 1998), for the proposition that "a *Sears* instruction is not required when there is overwhelming evidence of a drug conspiracy with non-governmental conspirators." But *Montgomery* never announced any such rule, implicitly or

9

explicitly. Indeed, the *Montgomery* court's conclusion that the defendant in that case was not entitled to a *Sears* instruction was not based on its consideration of the trial evidence but, rather, on the fact that the defendant conceded *on appeal* that his defense theory did not justify a *Sears* instruction. *Id.* at 996 (citing the concession as support for the conclusion that the defendant "did not rely on a *Sears*-type defense theory at trial"). The court's decision was also based on the defendant's failure to request a *Sears* instruction in the district court. *Id.* ("Montgomery did not request a Sears instruction, nor did he join in [his co-defendant]'s request for a similar instruction. Consequently, Montgomery 'failed to preserve for appeal his challenge' to the district court's omission of an instruction concerning this theory of his case." (citations omitted)). Because White specifically requested a *Sears* instruction at trial and presented sufficient evidence to support a *Sears* defense, *Montgomery* is inapposite. *See United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006) ("A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case if it has 'some foundation in evidence,' and he need only show that 'there is evidence upon which the jury could rationally find for the defendant.'" (quoting *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993))).

10

White contends that his RICO conspiracy conviction should also be vacated because of the district court's denial of a *Sears* instruction. However, White was not entitled to a *Sears* instruction for his RICO count as his theory of defense was not that he conspired with a government informant, but that the PBB was not a RICO enterprise and that the alleged underlying transactions did not constitute a sufficient pattern of racketeering activity. Because White's theory of defense did not support a *Sears* instruction as to the RICO count, the district court did not err in declining to give the instruction as to that count. *See Marguet-Pillado*, 648 F.3d 1006.

The district court's judgment and sentence as to Appellant Gabourel, Appeal No. 13-50183, is **AFFIRMED**. The district court's judgment and sentence as to Appellant Hardiman, Appeal No. 13-50184, is **AFFIRMED**. The district court's judgment and sentence as to Appellant White, Appeal No. 12-50589, is **AFFIRMED** except for White's conviction for Count 5, conspiracy to distribute controlled substances. We **REMAND** to the district court with instructions to **VACATE** White's conviction with respect to Count 5, unless the government

11

elects to retry him within a reasonable amount of time as determined by the district

court.[2]

---

    [2]We note that the district court sentenced White to 168 months imprisonment on each count, Count 1, Count 5, and Count 16, to run concurrently. This disposition vacates White's conviction as to Count 5 only. We leave the determination of the effect, if any, of the vacatur on White's sentence to the district court.

12

United States v. White, No. 12-50589

CALLAHAN, Circuit Judge, concurring in part, and dissenting in part:

While I agree with the majority on all other counts, I would affirm White's

conviction for conspiracy to distribute controlled substances. In my view, the

district court did not abuse its discretion in declining to provide a *Sears* instruction.

I read *United States v. Montgomery*, 150 F.3d 983, 996–97 (9th Cir. 1998), as

implicitly holding that a *Sears* instruction is not required when there is

overwhelming evidence of a drug conspiracy with non-governmental conspirators.[1]

Here, there was abundant evidence that White was a high-ranking, senior

member of the Pueblo Bishops criminal street gang, and that one of the gang's

primary purposes was to control drug sales in the Pueblo Bishops Housing

Projects. The government produced evidence of hundreds of drug transactions

conducted by PBB members, and that White knew and approved of these drug

---

[1]Despite the differences in posture, *Montgomery* is instructive. On appellate review in *Montgomery*, we considered "'whether the case presented at trial support[ed] giving an instruction based on a particular theory of defense.'" *Id.* at 996 (quoting *United States v. Span*, 970 F.2d 573, 578 (9th Cir. 1992)). In holding that the defendant did not rely on a *Sears*-type defense theory at trial, we stated: "Montgomery asks this court to consider the possibility that the jury could have disbelieved every shred of evidence presented at trial except for [his conversations with the government informant] and concluded that Montgomery had conspired to manufacture, distribute, and import methamphetamine solely with [the government informant]." *Id.* Thus, in reaching its holding that a *Sears* instruction was not required, we reflected on the paucity of evidence suggesting that the defendant conspired only with the government agent. We should reflect here as well.

sales by his position in the PBB and by encouraging other PBB members to protect the gang's drug selling territory. In light of this evidence, the district court did not err in finding that there was an insufficient evidentiary foundation to require a *Sears* instruction.

The jury's drug quantity finding does not imply that it found White conspired only with the government informant. Rather, the more compelling inference is that the jury accepted the overwhelming evidence of White's conspiracy with PBB members to sell drugs in the Housing Project, including, but not limited to, the two sales to the confidential informant, but only found the drug quantities of those two sales were proven beyond a reasonable doubt. The quantity finding does not negate evidence of the conspiracy between PBB gang members to distribute drugs.

We have not held that a *Sears* instruction is required, per se, in every conspiracy case in which a government informant is present. But following the majority's approach, when would a district court *ever* have the discretion to deny a request for a *Sears* instruction when the alleged conspiracy involves a government informant?

District courts are frequently bombarded with proposed jury instructions with little time for research. Accordingly, we afford district courts considerable

2

deference in determining whether a jury instruction has sufficient evidentiary foundation. *United States v. Daane*, 475 F.3d 1114, 1119 (9th Cir. 2007). This is the precise instance in which, as an appellate court, we should defer to the discretion of a district court. Here, the district court spent over one-hundred hours with defense counsel presiding over this trial, presiding over other co-defendants' trials, and conducting other related proceedings. The district court was well aware of the facts alleged and the theory of defense. I would hold that the district court did not abuse its discretion in declining to give a *Sears* instruction.

I respectfully dissent.