# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2024

Lyle W. Cayce
Clerk

———————

No. 23-20133

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Priscilla Yvette Cervantes,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CR-166-2

———————————————————————

Before Elrod, Graves, *Circuit Judges*, and Ashe, *District Judge*.\*
Barry W. Ashe, *District Judge*:

Priscilla Yvette Cervantes ("Cervantes") was convicted after a jury trial of participating in a drug-trafficking conspiracy to possess, and aiding and abetting possession, with the intent to distribute a controlled substance. She appeals her conviction. We AFFIRM.

———————————————

\* United States District Judge for the Eastern District of Louisiana, sitting by designation.

No. 23-20133

## I.   BACKGROUND

This case began in July 2020, when the Federal Bureau of Investigation ("FBI") received a tip that Alexsander Reyes ("Reyes"), a former Harris County Precinct One Constable's Deputy, was corrupt and stealing drugs from law enforcement seizures.  Reyes was Cervantes's boyfriend and, eventually, her husband.  The Federal Bureau of Investigation ("FBI") targeted Reyes in a reverse-sting operation, making him believe that he was transporting money and escorting drugs for a cartel in exchange for cash payments.  To that end, now-retired FBI agent Patrick Fransen ("Fransen") arranged for Reyes to meet "Danny," a confidential informant working for the FBI.  Danny pretended to be a member of a drug cartel looking for assistance in transporting illegal drug money from Louisiana to Houston, Texas.  Over the next several months, Reyes and Danny conversed 75–100 times relevant to the investigation, using coded terms for drugs, such as "birds," "tequila," and "Rolexes."

Reyes's first job for the cartel, transporting $200,000 from Lake Charles, Louisiana, to Houston occurred on August 20, 2020.  Cervantes accompanied Reyes on the trip, which put her on the FBI's radar.  This was also the first time Reyes met "Chango," an undercover FBI agent who was working on the sting.  Before Reyes and Cervantes left in the Mercedes that Danny rented for the money run, Reyes pointed to Cervantes and told Danny that she was a police officer and Reyes was preparing her to participate in the scheme.  An FBI investigation later determined that Cervantes was never employed as a police officer.  Danny paid Reyes $10,000 for the job.

In September 2020, Danny met Reyes and Cervantes at a restaurant in Houston.  Danny and Reyes discussed adding more officers to the team, Reyes meeting the big boss known as "el Patron," and Reyes doing a "rip," *i.e.*, stealing money from "el Patron."  Cervantes did not talk but appeared

to be listening. When Danny expressed the cartel's preference for recruiting police officers to participate, Reyes again claimed that Cervantes was an officer, and Cervantes showed Danny what appeared to be a law enforcement badge.

A second money run was planned for September 17, 2020. This time, Reyes was to meet Chango in Lake Charles to pick up $150,000 and bring it to Danny in Houston. Reyes was to be paid $7,500. A few days before the trip, Danny asked Reyes if Cervantes was going to accompany him, and Reyes said that she would. Reyes also told Danny not to worry about Cervantes because she was "in it, too." Also, Reyes asked Danny to hold back some of the money so that Cervantes would not know the full amount of the payment.

On September 17, 2020, Reyes drove his new pickup truck to Lake Charles to meet Chango in a store parking lot. Cervantes was with him. Chango gave Reyes the money and Reyes drove it back to Houston where he gave it to Danny. Cervantes was in the passenger's seat of Reyes's truck when Reyes met Danny. Danny gave Reyes $6,000. The next day, Reyes met Danny to collect the remaining $1,500.

On September 24, 2020, Reyes attended a dinner at a fancy restaurant in Houston with Danny and some undercover FBI agents, one of whom was playing the role of "el Patron." Prior to the dinner, Reyes and Danny discussed Reyes's and Cervantes's financial problems and that Reyes wanted to do more work for the cartel. Reyes was willing to transport money, but not drugs. However, he was willing to escort drugs. At the dinner, the parties discussed drugs, money, and how drugs had been stolen from the cartel on a prior run. Reyes expressed his willingness to escort loads of drugs through Houston and to recruit other officers to help. "El Patron" told Reyes that the other escorting officers would have to know what is being transported to protect it. Reyes told "el Patron" that he was willing to rip off competing

drug dealers, follow loads of drugs through Houston and Louisiana, and use violence if necessary. After the dinner, Reyes continued to ask Danny for cartel work, but Danny stalled because the FBI had put the investigation on hold.

In December 2020, Danny and Chango gave Reyes the opportunity to escort a load of drugs through Houston. The original plan was for Reyes, driving his police cruiser, to escort a load of heroin in a tractor-trailer driven by Chango. Reyes would be paid $1,000 per kilogram of heroin that was transported. Danny told Reyes this was a "test run," meaning a smaller amount of drugs were involved. The FBI arranged for the escort to begin in Fort Bend County, Texas, rather than in Harris County, Texas, where Reyes was an officer, because Reyes had indicated that others could help with the escort, including Cervantes. The plan was for Cervantes to drive Reyes's personal truck, which had red and blue lights and other police markings, as a "ghost truck" for the portion of the escort through Fort Bend County.

The drug escort occurred on December 8, 2020. The FBI was not able to gather enough heroin, so instead, the FBI used six kilograms of real cocaine, and four kilograms of "fake cocaine," and placed it in a lockbox in the back of a tractor-trailer.[1] The FBI decided that Cervantes would meet Chango at a certain H-E-B grocery store parking lot. Cervantes initially went to the wrong parking lot. When Cervantes arrived at the correct location, she flashed her red and blue lights. Chango approached Cervantes's vehicle and spoke with her. He told her that the tractor-trailer contained cocaine. During this in-person interaction between Cervantes and Chango, Reyes was on two separate phones with Chango and Cervantes at the same time. Chango told

---

[1] The parties stipulated that a forensic scientist would have testified that the packages contained 6,266.32 grams of cocaine with purity levels ranging from 63% to 78%.

Reyes that the tractor-trailer contained "birds," which is slang for kilograms of cocaine, and told her that the "birds" had to get through. Cervantes responded to Chango, "I got you." After that conversation, Chango returned to the tractor-trailer and started driving through the parking lot and then onto I-10, with Cervantes following right behind him for about a 40-minute drive. Eventually, Reyes showed up in his Harris County police cruiser and took over the escort. Both Cervantes and Reyes were arrested.

Cervantes was charged by superseding indictment with two counts: (1) conspiring with Reyes, and others known and unknown to the grand jury, from about July 2020 to April 2021 to possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(c), and 18 U.S.C. § 2; and (2) aiding and abetting Reyes, and others known and unknown to the grand jury, on December 8, 2020, to possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2. She elected to be tried by a jury.

During the cross-examination of Fransen, Cervantes's counsel played Defense Exhibit #3 ("DX3"), which was a video of a conversation between Reyes and Cervantes that occurred after the December 8, 2020 escort. Reyes said to Cervantes that Chango's tractor-trailer contained Rolex watches because Reyes did not "do anything illegal." Fransen further testified that at some prior time Reyes told him that Cervantes had no idea what was going on. Fransen also testified that Reyes was using "Rolex watches" as a code phrase for drugs.

Prior to trial, the government filed a written objection to Defense Exhibit #4 ("DX4"), which was a video clip of Reyes's post-arrest interview

with an FBI agent.  In the video, an FBI agent asks Reyes what Cervantes knew and why she was participating in the scheme, and Reyes responded:

> You know I just asked her to go with me.  I asked her to go with me.  I told her to go pick up some money.  I told her <sigh> it was going to be Rolexes that we were transporting back, that they didn't want to get robbed but they had been robbed before, and she even asked were there drugs, I said no, no drugs, no drugs.

Cervantes filed a written response, arguing that DX4 was admissible on several grounds, including under Rule 801 of the Federal Rules of Evidence for the non-hearsay purpose of showing Reyes's state of mind.  The parties argued the motion at the final pretrial conference, and the district court granted the government's motion to exclude DX4 "basically with the reasoning [that it was] not independently admissible if Reyes [did] not testify."

During the trial, Cervantes renewed her request to admit DX4.  This time, she argued that it was admissible for the non-hearsay purpose of showing the consistency of Reyes's statements concerning her knowledge.  The other similar statement was the one in DX3 where Reyes said to Cervantes after the escort that he thought Chango's tractor-trailer contained Rolex watches.  The district court again denied Cervantes's request.

After the government rested, Cervantes moved for acquittal on both counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  Cervantes argued that there was insufficient evidence to show that she or Reyes ever actually or constructively possessed the cocaine, or that she knew, or reasonably should have known, that the weight of the cocaine was at least five kilograms.  The district court denied the motion.  Cervantes rested her case without calling any witnesses.

At the jury charge conference, Cervantes requested an instruction consistent with *Sears v. United States*, 343 F.2d 139 (5th Cir. 1965), that a defendant's agreement with only a government agent cannot be the basis for a conspiracy conviction.  The government argued that the instruction was unnecessary because the conspiracy was between Cervantes and Reyes, not between Cervantes and a government agent or informant.  The district court denied Cervantes's request to include the *Sears* instruction.

Cervantes also argued that there was insufficient evidence to submit to the jury the question of whether the conspiracy involved at least five kilograms of cocaine because the government did not present any evidence that she had knowledge of the amount.  The district court overruled Cervantes's objection.

The jury returned guilty verdicts on both counts.  In addition, the jury found in special interrogatories that Cervantes knew, or reasonably should have known, that the scope of the conspiracy and aiding and abetting involved at least five kilograms of cocaine.  Cervantes renewed her motion for acquittal, which the district court denied.

The district court later sentenced Cervantes to 121 months' imprisonment as to each count, to be served concurrently, and a five-year term of supervised release on each count, to run concurrently.  Cervantes timely filed a notice of appeal.

Cervantes raises three issues on appeal.  First, she argues that the district court reversibly erred in denying her motion for judgment of acquittal.  Second, she contends that the district court reversibly erred in failing to give a jury instruction consistent with *Sears* that she could not be in a conspiracy alone with a government agent.  And third, Cervantes argues that the district court erred by excluding DX4.

## II.    ANALYSIS

### A. The district court did not reversibly err by denying Cervantes's motion for judgment of acquittal.

#### 1.  Standard of review

Because Cervantes preserved her claims by moving for a judgment of acquittal in the district court on the same grounds raised here, this court reviews the denial of Cervantes's motion *de novo*. *See United States v. Jimenez-Elvirez*, 862 F.3d 527, 533 (5th Cir. 2017). Nonetheless, any review of challenges to the sufficiency of the evidence is "highly deferential to the verdict." *United States v. Nicholson*, 961 F.3d 328, 338 (5th Cir. 2020) (quotation omitted). And this court reviews "the evidence and all reasonable inferences in the light most favorable to the prosecution and to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lara*, 23 F.4th 459, 470 (5th Cir. 2022) (quotation omitted). But this court is still "empowered to consider . . . whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime." *United States v. Vargas-Ocampo*, 747 F.3d 299, 302 (5th Cir. 2014) (en banc).

#### 2.  Cervantes was not entitled to an acquittal on either count.

Cervantes argues that the district court reversibly erred in denying her motions for acquittal because neither she nor Reyes possessed, or agreed to personally possess, cocaine.

##### a.  Count 1 – conspiracy

As to count 1, conspiracy, Cervantes argues that she and Reyes were the only two people involved who were not government agents and they did not agree to possess with the intent to distribute a controlled substance, but

merely agreed to escort a tractor-trailer containing drugs that was always in Chango's control.  Thus, neither she nor Reyes actually or constructively possessed the cocaine.

The government argues that, under conspiracy law, it was unnecessary for Cervantes and Reyes to specifically agree to possess cocaine themselves, but rather, it was sufficient for the scope of their agreement to include possession by Chango.  Also, contends the government, the evidence shows that Cervantes and Reyes agreed to constructively possess the cocaine by assuming responsibility for its safety pursuant to the escort, which was an exercise of dominion and control.

"The essential elements of a drug conspiracy are (1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) h[er] voluntary participation in the agreement." *Vargas-Ocampo*, 747 F.3d at 303.  "The agreement may be tacit, and the jury may infer its existence from circumstantial evidence." *United States v. Scott*, 892 F.3d 791, 797 (5th Cir. 2018) (quotation omitted).  Although the defendant "must voluntarily participate in the conspiracy, [s]he need only play a minor role in the overall scheme." *United States v. Ayala*, 887 F.2d 62, 68 (5th Cir. 1989).  Indeed, in a drug conspiracy, the defendant's possession of the drugs is not an element of the crime.  *Scott*, 892 F.3d at 797; *see also United States v. Fernandez*, 559 F.3d 303, 322 (5th Cir. 2009) (concluding that the fact that the defendant "does not physically possess drugs . . . does not defeat conviction" for conspiracy to possess with intent to distribute drugs).  Further, "drug type is not an element of 21 U.S.C. § 841(a)(1) or of conspiracy to commit a violation of § 841(a)(1)." *United States v. Alexander*, 2024 WL 21396, at *1 (5th Cir. Jan. 2, 2024) (citing *United States v. Patino-Prado*, 533 F.3d 304, 309–10 (5th Cir. 2008) (observing that the government need only "demonstrate beyond a reasonable doubt that the

defendant conspired to possess with intent to distribute some controlled substance")).

"[T]o prove the existence of a drug conspiracy, the evidence must show beyond a reasonable doubt that two or more non-governmental persons agreed to commit the alleged offense." *United States v. Goff*, 847 F.2d 149, 173 (5th Cir. 1988). "A government agent or informer cannot be a co-conspirator," *id.*, because the agent or informer does not "share the unlawful objective of those engaged in the unlawful enterprise." *Id.* at 173 n.37; *see also United States v. Escajeda*, 8 F.4th 423, 426 (5th Cir. 2021) ("[A]n agreement with a government informant cannot be the basis for a conspiracy conviction because the informant does not share the requisite criminal purpose.") (internal quotation marks omitted). However, a defendant may still be convicted of participating in a drug conspiracy even when the government agent or informer performs an essential act to consummate the substantive offense. *United States v. Seelig*, 498 F.2d 109, 112–13 (5th Cir. 1974); *United States v. Palella*, 846 F.2d 977, 980 (5th Cir. 1988).

Here, there was substantial evidence for the jury to find beyond a reasonable doubt that Cervantes and Reyes, two non-government actors, engaged in an agreement, *i.e.*, a conspiracy, to operate on behalf of the cartel. The criminal activities completed by Reyes and Cervantes in furtherance of the conspiracy included the two drug money runs performed by them and the tractor-trailer escort where they agreed to ensure the safe passage of a controlled substance in exchange for payment. While Cervantes contends that she did not know that drugs were involved, the jury had sufficient evidence to find otherwise (*e.g.*, Chango's explicit reference to cocaine when speaking with Cervantes and Reyes immediately prior to the escort). It is immaterial that a government agent had actual possession of the cocaine, or that the original agreement supposedly involved heroin. The overarching conspiracy involved an agreement to possess with the intent to distribute a controlled

substance, and two non-government actors, Cervantes and Reyes, were parties to that agreement. Cervantes's and Reyes's actual or constructive possession of the cocaine is irrelevant with respect to the conspiracy charge. *See Seelig*, 498 F.2d at 112–13 (holding that a defendant may be convicted of conspiracy even when a government agent performs an essential act); *Scott*, 892 F.3d at 797–98 (holding that the defendant's possession of the drugs is not an element of a drug conspiracy charge). Moreover, the switch from heroin to cocaine is also immaterial because drug type is not an element of conspiracy and Chango told both Reyes and Cervantes prior to the escort that the tractor-trailer contained cocaine. *See Alexander*, 2024 WL 21396, at *1 (observing that "drug type is not an element of 21 U.S.C. § 841(a)(1) or of conspiracy to commit a violation of § 841(a)(1)"). All that was required to consummate the alleged drug-trafficking conspiracy was for Cervantes and Reyes to have agreed with each other to participate in a scheme that involved possession with the intent to distribute a controlled substance. The sum of the evidence showing Cervantes's participation in the conspiracy with Reyes was sufficient for the jury to convict Cervantes of conspiracy.

### b. Count 2 – aiding and abetting

As to count 2, aiding and abetting, Cervantes argues that the government did not prove beyond a reasonable doubt that some person committed the substantive offense of possession with the intent to distribute a controlled substance. According to Cervantes, neither she nor Reyes ever had, or planned to have, actual or constructive possession of the cocaine. Instead, Chango, a government agent, possessed the drugs and, by law, he cannot be considered to have committed the substantive offense. Cervantes further argues that neither she nor Reyes ever had the ability to reduce the cocaine to their actual possession because it was locked in a box inside the tractor-trailer and under the government agents' control.

No. 23-20133

The government argues that Fifth Circuit jurisprudence allows for Cervantes to be convicted of aiding and abetting Chango, regardless of the fact that he was a government agent. Alternatively, the government argues that there was plenty of evidence that Cervantes aided and abetted Reyes in committing the substantive offense because they both constructively possessed the cocaine by facilitating its safe travel via the escort they provided.

In reply, Cervantes argues that the jurisprudence cited by the government is inapplicable because it relies upon the wrong subsection of 18 U.S.C. § 2. She further reiterates her contention that neither she nor Reyes constructively possessed the cocaine in the tractor-trailer, explaining that the government exaggerates their roles, and the scope of their control, in a scenario that was created, and ultimately controlled, by government agents.

Title 18, United States Code § 2, provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by h[er] or another would be an offense against the United States, is punishable as a principal.

"The crime of aiding and abetting occurs when the defendant associates with a criminal venture, purposefully participates in it, and seeks by his actions to make it succeed." *Scott*, 892 F.3d at 798 (quotation omitted). An aiding-and-abetting conviction requires proof that "the substantive offense occurred and that the defendant (1) associated with the criminal venture; (2) purposefully participated in the crime; and (3) sought by his actions for it to succeed." *Id.* (quotation omitted). "To be guilty of aiding and abetting possession of drugs with intent to distribute, each defendant must have aided and abetted both the possession of the drug and the intent to distribute it."

12

*United States v. Williams*, 985 F.2d 749, 753 (5th Cir. 1993). "But a defendant need not commit each element of the substantive offense, so long as he aided and abetted each element." *Scott*, 892 F.3d at 798–99. "Importantly, the defendant need not have actual or constructive possession of the drugs to be guilty of aiding and abetting possession with intent to distribute." *Id.* at 799 (quotation and internal quotation marks omitted).

In *United States v. Wise*, this court stated that "[u]nder Fifth Circuit jurisprudence, an aiding and abetting conviction for a completed substantive offense may stand even if the principal is a government agent with no guilty intent and therefore no substantive crime actually was committed." 221 F.3d 140, 150 (5th Cir. 2000). The *Wise* court cited two cases in support of this statement, *United States v. Moreno*, 878 F.2d 817, 821 (5th Cir. 1989), and *Haynes v. United States*, 319 F.2d 620, 621–22 (5th Cir. 1963). In *Moreno*, this court rejected the argument that the defendant did not commit a crime because she aided and abetted a government informant. 878 F.2d at 821. Similarly, in *Haynes*, this court held that a defendant who arranged for an informant to smuggle drugs could be convicted of importing controlled substances even though the informant was a government agent. 319 F.2d at 621–22.

Cervantes argues that these Fifth Circuit precedents are factually distinguishable from her case. Cervantes contends that the defendants in *Wise*, *Moreno*, and *Haynes* were convicted of causing an act to be done under 18 U.S.C. § 2(b), whereas she was charged and convicted of aiding and abetting the commission of the offense done under 18 U.S.C. § 2(a). This argument lacks merit. Neither the indictment, the jury instructions, nor the jury verdict form in Cervantes's case makes a distinction between subsections (a) and (b). Indeed, Cervantes was charged under the statute as a whole, 18 U.S.C. § 2, and the jury instructions addressed the statute as a whole. Further, the courts in *Wise*, *Moreno*, and *Haynes* made no such distinction either. Because Chango's completion of the substantive offense was sufficient to

convict Cervantes of aiding and abetting, even though he was a government agent, Reyes's actual or constructive possession of the cocaine is irrelevant. The sum of the evidence showing that Cervantes aided and abetted the possession of a controlled substance with the intent to distribute it was sufficient for the jury to convict Cervantes on count 2.[2]

## B. The district court did not reversibly err by failing to give a *Sears* instruction to the jury.

### 1. Standard of review

This court reviews a district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Hagen*, 60 F.4th 932, 946 (5th Cir. 2023). An abuse of discretion occurs if the requested instruction: "'(1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense.'" *Id.* (quoting *United States v. Simkanin*, 420 F.3d 397, 410 (5th Cir. 2005)).

### 2. Analysis

Cervantes argues that the district court abused its discretion by refusing to give the requested *Sears* jury instruction, *i.e.*, that a defendant cannot be in a conspiracy alone with a government agent. Cervantes contends that this point was not covered by another jury instruction. And, says Cervantes, the instruction concerned an important matter that seriously impaired her

---

[2] Because this court affirms Cervantes's conviction on count 2—aiding and abetting—it need not address whether the evidence of drug quantity was sufficient to trigger a 10-year mandatory minimum sentence on count 1—conspiracy. Cervantes does not challenge the jury's finding as to the quantity of cocaine involved in count 2, and the district court imposed the same sentence as to both counts, to be served concurrently.

defense, especially considering that the other jury instructions and the prosecutor's closing argument created the potential that the jury would convict her based upon her conspiring only with Chango. More specifically, Cervantes argues that the indictment charges that she conspired with Reyes to possess with the intent to distribute cocaine, but the evidence showed that Reyes believed he was in a conspiracy involving heroin. According to Cervantes, then, because Reyes did not know that the tractor-trailer contained cocaine until after the escort, she could not have been in a conspiracy with him regarding cocaine, and thus, there was a real danger that the jury convicted her based on her being in a cocaine conspiracy with Chango, a government agent.

The government argues that the district court did not abuse its discretion by refusing to give the *Sears* instruction because there was ample evidence that Cervantes conspired with Reyes, who was not a government agent. The government clarified in the indictment, and in argument, that Reyes was Cervantes's alleged co-conspirator. The government further maintains that the jury instructions otherwise protected against the possibility of the jury improperly convicting Cervantes based on a conspiracy with a government agent because the instructions defined conspiracy as a partnership in crime and there was ample evidence that neither Danny nor Chango had the requisite intent to commit a crime. The government also argues that, even if the district court erred by not giving the *Sears* instruction, the error is not reversible because Cervantes did not advance the defense that she conspired only with government agents. Finally, the government argues that drug quantity and type are not "formal" elements of a conspiracy or possession offense, so it is irrelevant that the escort involved cocaine, rather than heroin. Thus, says the government, the *Sears* instruction was unnecessary.

In reply, Cervantes argues that the proper test is whether the jury "may well have believed" that it could convict her "simply by believing" that she conspired only with Chango. According to Cervantes, that was a real

possibility because the only recorded conversation admitted into evidence that captured her discussing drugs was a conversation between her and Chango just before the escort began in which cocaine was mentioned. Cervantes also points out that the jury instructions repeatedly referred to a conspiracy involving cocaine, which could have led the jury to convict her based only on a conspiracy between her and Chango. Further, Cervantes argues that the jury instructions did not minimize the risk of an improper conviction in this respect, especially considering that the prosecutor's closing argument focused on her conversation with Chango and implored the jury to listen to the district judge's instructions on the law, not her lawyer's closing arguments.

In *Sears*, the defendant, a county sheriff, was approached by a former-bootlegger-turned-government-informant who asked him to provide protection for an illegal whiskey operation. 343 F.2d at 141. The defendant knew that other persons, whose names were unknown to him, were also aiding in the operation, but his only communication was with the government informant. *Id.* Although this court held that the evidence was sufficient to convict the defendant of the conspiracy charged, it further held that the jury could not convict the defendant merely upon finding that he conspired with the government informant. *Id.* at 141–42. In other words, the government had to prove that the defendant participated in the conspiracy with knowledge that other persons, who were not government agents, were also involved in the illegal enterprise. *Id.* at 142. Thus, concluded the *Sears* court, the district court erred in failing to give a cautionary jury instruction that a defendant cannot be in a conspiracy alone with a government agent. *Id.*

In *United States v. Delgado*, this court stated that a *Sears* instruction explaining that "an 'agreement' with a government agent cannot be the basis for a conspiracy conviction because a government agent does not share the accused's criminal purpose" should be given "in appropriate

circumstances." 672 F.3d 320, 341 (5th Cir. 2012) (en banc) (citing *Sears*, 343 F.2d at 142 ("[A]s it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy.")). The *Delgado* court held that the district court did not reversibly err in failing to give a *Sears* instruction because there was ample evidence that the defendant entered into an agreement with actual co-conspirators, not just government agents. *Id.* at 342. The court further stated that "[w]here the evidence clearly establishes that the defendant conspired with non-governmental participants, the mere fact a government agent was also involved in the scheme does not necessitate a *Sears* instruction." *Id.* (citing *United States v. Slaughter*, 238 F.3d 580, 585 (5th Cir. 2000)).[3]

The *Sears* instruction requested by Cervantes was substantively correct and not substantially covered in the charge given to the jury. Although it might have been prudent to give the instruction, the district court did not reversibly err by failing to do so because the failure to include a *Sears* instruction did not seriously impair Cervantes's ability to advance a particular defense—even if, in the end, her defense did not succeed. Cervantes's defense was that the jury could have believed she conspired only with Chango, a government agent. But, here, there was ample evidence that Cervantes entered into the alleged drug conspiracy with Reyes. Reyes, a non-government actor, was Cervantes's main communicator regarding the conspiracy. Indeed, he recruited her to participate and campaigned for the government agents to accept her participation. Cervantes spoke only briefly with government agents Chango and Danny. Hence, the evidence against Cervantes established the

---

[3] Cervantes urges that *Delgado* and *Slaughter* are inapposite because they were decided on plain-error review. But, as reflected below, we are careful to apply the relevant legal principles from these two cases using the abuse-of-discretion standard of review applicable here. Understood through this lens, *Delgado* and *Slaughter* are instructive.

existence of two actual co-conspirators (she and Reyes) apart from the government agents. Further, Cervantes's contention that a *Sears* instruction was required because the evidence showed she and Reyes entered into a conspiracy involving heroin, and not cocaine, is misplaced for, again, "drug type is not an element of 21 U.S.C. § 841(a)(1) or of conspiracy to commit a violation of § 841(a)(1)." *Alexander*, 2024 WL 21396, at *1. Thus, it is irrelevant that the only time Cervantes heard about cocaine was in her conversation with Chango just prior to the escort. Regardless, Reyes was on the phone with Cervantes when that conversation occurred and consequently knew at that time that they were escorting cocaine. The jury reasonably could have believed, then, based on the evidence at trial, that Cervantes entered into a conspiracy with Reyes to possess with the intent to distribute controlled substances, whether cocaine or heroin. It matters not the type of drug that they actually escorted. In sum, the requested *Sears* instruction was not necessary, and the district court did not abuse its discretion by failing to give it.

## C. The district court did not reversibly err by excluding DX4.

### 1. Standard of review

The parties dispute the proper standard of review. Cervantes argues that the abuse-of-discretion standard applies because she preserved her objection to the district court's evidentiary ruling. The government, on the other hand, argues that Cervantes did not preserve in the district court the particular ground for objection she raises on appeal, so a plain-error standard applies. Because Cervantes's appeal fails under both the abuse-of-discretion and plain-error standards of review, the court need not determine which standard applies. *United States v. Nwoko*, 2022 WL 2205470, at *1 (5th Cir. June 21, 2022) (citations omitted).

"'A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence.'" *United*

*States v. Portillo*, 969 F.3d 144, 168 (5th Cir. 2020) (quoting *United States v. Insaulgarat*, 378 F.3d 456, 464 (5th Cir. 2004)).  On the other hand, the appellate court finds "plain error when: (1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights."  *Id.* (quotation omitted).  "If these elements are met, the court should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Id.* (quotation and internal quotation marks omitted).

### 2. Analysis

Cervantes argues that the district court reversibly erred by granting the government's motion *in limine* to exclude DX4 (the video clip of Reyes's post-arrest interview with FBI agent Fransen) because it was offered for the non-hearsay purpose of showing her state of mind.  Cervantes contends that the purpose of DX4 was to show that Reyes was lying to her, concealing the true nature of his agreement with Danny and Chango, and thereby evincing that she lacked the requisite guilty knowledge.  Cervantes further argues that the exclusion of DX4 was not harmless because it shows that Reyes lied to her about the contents of the tractor-trailer and the only other evidence supporting her defense was conversations between her and Reyes where only his half of the conversation was audible.

The government argues that DX4 is hearsay within hearsay because it was offered for the truth of what Reyes said to Fransen about what Reyes said to Cervantes, *viz.*, that Reyes told Cervantes that the tractor-trailer contained Rolexes (watches, not drugs).  The government also argues that any assumed error did not affect Cervantes's substantial rights because the jury already knew from witness testimony that Reyes told law enforcement agents that Cervantes lacked the requisite criminal intent.  Further, the government argues that the jury was unlikely to afford much weight to DX4 because there

was compelling evidence that Cervantes knew what was going on, Reyes had motive to lie to protect her (his girlfriend and later wife), Reyes frequently used "Rolexes" as a code word for drugs, and Cervantes told Chango that she would protect the cocaine. Finally, the government argues that the exclusion of DX4 did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because DX4 lacked any indicia of reliability given Reyes's motive to lie and the defense was able to present other evidence that Cervantes lacked intent.

In reply, Cervantes argues that this court should not consider the government's "new" double hearsay argument because it was not raised in the district court. Regardless, Cervantes argues that DX4 was admissible because she offered it for its falsity, *i.e.*, to attack Reyes's credibility.

Hearsay is a statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c)(2). Hearsay is generally inadmissible unless it fits an exception. Fed. R. Evid. 802. A statement is not hearsay when it is offered for the purpose of showing a person's state of mind, such as having knowledge. *United States v. Obregon-Reyes*, 507 F. App'x 413, 424 (5th Cir. 2013). A statement to person X about what person Y said to person Z is double hearsay. *See United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008). Hearsay within hearsay is inadmissible unless both parts are shown to be admissible. Fed. R. Evid. 805.

DX4 is hearsay within hearsay. It is Reyes's out-of-court statement to Fransen about what Reyes supposedly said to Cervantes at an earlier time. Cervantes claims Reyes's statement to Fransen is not inadmissible hearsay because it shows her state of mind, specifically, that she lacked intent because Reyes told her that the tractor-trailer contained Rolexes. But she has not offered a hearsay exception for the second layer of hearsay, *i.e.*, what Reyes said to Fransen. Instead, she is offering what Reyes said to Fransen

for the truth that Reyes made the underlying comment to her. Thus, DX4 was inadmissible. Cervantes's argument that this court should not consider the double hearsay problem because the government did not raise it below is groundless. The government raised hearsay, in general, as an objection, which was sufficient to give the district court the opportunity to consider whether the statement was hearsay generally. Moreover, the exclusion of DX4 did not substantially affect the outcome of the trial because other evidence that Cervantes lacked intent was presented to the jury. In particular, Fransen testified that Reyes told him that Cervantes did not know what was going on. Accordingly, the district court properly excluded DX4.

## III.  CONCLUSION

The judgment of conviction on both counts 1 and 2 is therefore AFFIRMED.